UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD KEVIN STEIGER,

                Plaintiff,                        Case No. 15-cv-12627

v.                                        Honorable Thomas L. Ludington

ROBERT HAN, MICHAEL A. CALDWELL,
PATRICK BOYD, DELMAR PUTNAM,
KEN MILLS, JR., BRADLEY SZATKOWSKI,
ALAN BURKE, JOSEPH BREWBAKER and
ROBERT T. PASCHKE, in their individual
and official capacities,

                Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS, DISMISSING COMPLAINT AS TO DEFENDANTS PASCHKE AND
BREWBAKER, AND DISMISSING COUNT IV OF COMPLAINT AS TO DEFENDANT
SZATKOWSKI**

      This case is on its second circuit through this Court. Plaintiff Richard Kevin Steiger filed

an action against many of the same defendants on October 24, 2014. *See Steiger v. Hahn*

(*Steiger I*), Case No. 14-14110. The complaint in *Steiger I* alleged four constitutional violations

under 42 U.S.C. § 1983: illegal seizure in violation of the Fourth Amendment, malicious

prosecution in violation of the Fourth Amendment, retaliation in violation of the First

Amendment, and denial of due process in violation of the Fourteenth Amendment. The

complaint also alleged that the named defendants committed the tort of gross negligence.

      *Steiger I* was voluntarily dismissed without prejudice on May 6, 2015. Steiger refiled his

case on July 27, 2015 bringing all five of the same claims and naming all of the same defendants

from *Steiger I*. Steiger has also added two new Defendants: Robert Paschke, Sheriff of the

Presque Isle County Sheriff's Department, and Robert Brewbaker, Undersheriff of the Department.

Defendants Paschke and Brewbaker have moved for judgment on the pleadings. They assert that all of Steiger's claims against them are barred by the applicable statutes of limitations. Defendant Bradley Szatkowski, a deputy in the Department, joins partially in the motion and argues that Steiger's gross negligence claim against him is barred by the applicable statute of limitations.

## I.

Plaintiff Richard Steiger is a resident of Rogers City in Presque Isle County. Since October of 2006, Steiger has been the Prosecuting Attorney for Presque Isle County. Steiger married his now ex-wife in 1994. The two separated in 2005, ending in divorce in 2006.

Defendants Paschke, Brewbaker, and Szatkowski ("moving Defendants") were all members of the Presque Isle County Sheriff's Department at the time of the events in question. Defendant Paschke was the sheriff, Defendant Brewbaker was the undersheriff, and Defendant Szatkowski was a deputy.

## A.

In 1993, Steiger had a surgical procedure performed on his nose. The surgery was mishandled. As a result, Steiger "live[s] a life of continuous pain and discomfort . . . [and] ha[s] a significant history of sinusitis and migraine headaches." Pl.'s Compl. ¶ 25, ECF No. 1.

On September 11, 2011, Steiger underwent surgery to treat "a substantial gluteal abscess (boil on his buttocks)." *Id.* at ¶ 27. The treatment required follow-up appointments over the next two days. The surgical procedure to remove the abscess caused Steiger significant pain, so his physician prescribed him pain relievers to manage the discomfort.

The same day as Steiger's abscess procedure, he contacted his ex-wife and asked her to pick up their children from school. Steiger's ex-wife brought their children to Steiger's home to retrieve their belongings. While at Steiger's home she searched his home for pain medications. Steiger's ex-wife was aware of his sinus issues and chronic migraine headaches. While at Steiger's house, his ex-wife "located two pain medication prescriptions . . . [and] stole pain medication from a sheet located in Plaintiff's linen closet." *Id.* at ¶ 31.

After her search, Steiger's ex-wife contacted a Michigan State Police ("MSP") trooper with which she was acquainted, Defendant Alan Burke. Defendant Burke put Steiger's ex-wife in contact with another MSP trooper, Defendant Robert Hahn. Defendant Hahn was also the commander of the Huron Undercover Narcotics Team ("HUNT").

**B.**

Steiger's ex-wife met with Defendant Hahn in a cemetery on September 13, 2011. She provided him the prescription medication and told him that she had stolen the medication from Steiger's house. Defendant Hahn asked to keep the medication. He did not fill out a report of the incident, but did initiate a criminal investigation into Steiger.

Ten days later, Steiger's ex-wife and Defendant Han met again in the cemetery. During that meeting "Defendant Hahn filled out a confidential informant card that he promised [Steiger's ex-wife] 'would not see the light of day.'" *Id.* at ¶ 35. Defendant Hahn further told Steiger's ex-wife to deny any involvement in the investigation if confronted by Steiger. Defendant Hahn assured her that Steiger "would never learn of her involvement 'in a million years.'" *Id.* at ¶ 37. Defendant Hahn went on to share with Steiger's ex-wife information about

medication Steiger had been prescribed and that was contained in the Michigan Automated Prescription System.[1]

Shortly thereafter, Defendant Ken Mills, Jr., an MSP officer, also became involved in the investigation into Steiger. On October 24, 2011, assistant Attorney General Richard Cunningham provided Defendant Mills with a report drafted by a doctor that Cunningham had contacted. Cunningham provided the doctor with Steiger's MAPS information. Based on that information, the doctor drafted a report concluding that Steiger "had engaged in 'Doctor Shopping', and possibly was . . . working with [one of his doctors] to obtain and distribute pain medication." *Id.* at ¶ 41.

In reliance on the report he received from the assistant attorney general, Defendant Mills drafted affidavits for search warrants "for all pharmacy records and select physicians who treated Plaintiff's medical ailment." *Id.* at ¶ 42. The search warrants were signed by a state district judge on October 24, 2011. Defendant Hahn and Defendant Delmar Putnam, also an MSP officer and the commander of the HUNT team, executed the some of the search warrants the next day. Also the next day, Defendant Mills interviewed Steiger and informed him "that law enforcement had received an anonymous tip regarding Plaintiff's 'Doctor Shopping" and misuse of prescription medication." *Id.* at ¶ 46. Steiger informed Defendant Mills of his medical issues and need for pain medication. He also told Defendant Mills that he kept all of his physicians informed of the pain medication that he is prescribed and that he uses.

**C.**

---

[1] "The Michigan Automated Prescription System (MAPS) is the prescription monitoring program for the State of Michigan." See Michigan Automated Prescription System (MAPS), http://www.michigan.gov/lara/0,4601,7-154-72600_72603_55478---,00.html. The system helps "identify and prevent drug diversion at the prescriber, pharmacy and patient levels by collecting Schedule 2-5 controlled substances prescriptions dispensed by pharmacies and practitioners." *Id.*

During the time that Steiger was being investigated, he had a number of interactions with the law enforcement Defendants concerning certain practices of the Presque Isle County Sheriff's Department and the local Michigan State Police unit.

**1.**

At some point prior to September 2011, Steiger "became aware of the serious issue of drug smuggling and drug use in the Presque Isle County Jail by inmates, as well as the smuggling of contraband into the jail." *Id*. at ¶ 19. Steiger "had a detailed conversation with Defendant Brewbaker" in September 2011. *Id*. at ¶ 20. He informed Defendant Brewbaker that the "drug and contraband problem in the Presque Isle Jail had to be dealt with immediately, because this was the responsibility of the Presque Isle Sheriff's Department." *Id*. Steiger later "warned Defendants Brewbaker and Paschke . . . that if they did not immediately address and rectify the drug and contraband problem in the Presque Isle Jail, he would transfer the investigation over to the Michigan State Police." *Id*. at ¶ 22.

Defendants Paschke and Brewbaker did not take action on the drug and contraband problem, leading to Steiger referring the matter to the Michigan State Police. After the matter was transferred, "Defendant Brewbaker contacted Defendant Hahn regarding the investigation of the drug and contraband issue at the jail, and the matter was covered up, with no action being taken whatsoever." *Id*. at ¶ 24.

**2.**

On December 3, 2011, Steiger learned that Defendant Michael Caldwell, an MSP officer and commander, "was promoted to Inspector for the Seventh District of the Michigan State Police." *Id*. at ¶ 49. That day, Steiger contacted an FBI agent and "filed a formal complaint against Defendant Caldwell for closing an ongoing criminal investigation." *Id*. The criminal

investigation that Defendant Caldwell closed was against Caldwell's "son Ryan for purportedly committing a home invasion and criminal sexual conduct 3rd degree." *Id.*

### 3.

On December 8, 2011, acting in his professional capacity, Steiger held a meeting with Defendant Hahn. Defendant Putnam also attended the meeting, a surprise to Steiger. During the meeting Steiger informed Defendant Hahn that a method of interrogation used by Hahn was unlawful. He further told Defendants Hahn and Putnam that confessions resulting from such a method would not be voluntary. This precipitated a disagreement between Steiger and Defendant Hahn.

Also during the meeting, Steiger "clearly expressed his opinion that the HUNT officers were not lawfully doing their jobs." *Id.* at ¶ 52. Specifically, Steiger levelled the following accusations about HUNT officers: "they were not providing full disclosure of evidence; there was a long history of HUNT officers being deceptive; that HUNT discontinued presenting search warrants for Prosecutor review after Defendant Szatkowski offered false information to obtain a search warrant and Plaintiff reported this information to his superiors[.]" *Id.* Finally, Steiger raised his "ongoing concerns regarding HUNT's dishonest and unlawful police practices in the community." *Id.*

### D.

On December 27, 2011, two Assistant Attorneys General contacted Steiger and informed him "that he was going to be arrested for Fraudulently Obtaining a Prescription from a Health Care Provider contrary to MCL 333.7403A." *Id.* at ¶ 64. About one week later an Assistant Attorney General contacted Steiger's attorney and presented a plea offer. The Assistant Attorney General "threatened that if Plaintiff refused to accept his plea offer, he was prepared to put

Plaintiff through an 'embarrassing' Preliminary Examination in which Plaintiff's ex-wife and potentially his 16 year old daughter [who was actually 13 years old] would be called to testify against him." *Id.* at ¶ 66 (emendation in original). Steiger rejected the plea offer, maintaining his factual innocence.

Steiger appeared for a two-day preliminary examination in state district court on January 24, 2012 and February 2, 2012. At the close of the second day of the preliminary examination, the presiding judge dismissed the charges against Steiger without prejudice. The presiding judge "found that there was absolutely no evidence that Plaintiff had obtain[ed] a prescription for controlled substances by fraudulent means. To the contrary, the Judge ruled that Plaintiff disclosed what pain medication he was prescribed to all medical practitioners at every available opportunity." Id. at ¶ 70.

The State of Michigan appealed the decision to the Alpena County Circuit Court. On May 17, 2012, the state circuit court affirmed the district court's dismissal of the charges against Steiger. The State then sought leave to appeal to the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal on March 5, 2013.

**E.**

Steiger filed a federal civil rights action on October 24, 2014. He named as defendants Robert Hahn, Michael Caldwell, Patrick Boyd (an MSP officer on the HUNT team), Delmar Putnam, Ken Mills, Jr., Bradley Szatkowski, and Alan Burke (an MSP officer). Before any motion practice, the parties entered into a stipulation of dismissal without prejudice. The stipulation provided, in relevant part:

> It is **ORDERED** that the above-captioned case is **DISMISSED WITHOUT PREJUDICE** and without costs and/or fees to any party;

> It is further **ORDERED** that in the event that Plaintiff re-files a lawsuit involving the same Defendants, Defendants shall not be allowed to assert any

Statute of Limitations defense unless this defense was available to Defendants in the original complaint and lawsuit and as long as Plaintiff re-files this action within ninety (90) days from the entry of this Order.

It is further **ORDERED** that the discovery taken by all parties in the above captioned case is available to be used if Plaintiff re-files his cause of action in accordance with this Order.

May 6, 2015 Stip. & Order of Dismissal, ECF No. 28, *Steiger I*, Case No. 14-14110. The stipulation was entered on May 6, 2015 and the case was closed that day.

Steiger filed the present complaint on July 27, 2015.

## II.

Defendants Paschke, Brewbaker, and Szatkowski have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). "The standard of review for a [motion for] judgment on the pleadings [under rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir.2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### III.

Defendants argue that all of the claims brought by Plaintiff against Defendants Brewbaker and Paschke are barred by the applicable statute of limitations. Steiger alleges four claims under § 1983 against Defendants Paschke and Brewbaker. He also alleges a claim of gross negligence against them. Steiger also brings a gross negligence claim against Defendant Szatkowski. Defendants argue that the gross negligence claim brought against Defendant Szatkowski is also barred by the applicable statute of limitations.

### A.

For purposes of § 1983 actions, federal courts apply state personal injury statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 276, (1985). In Michigan, a three-year statute of limitations applies to federal claims brought under § 1983. *See* M.C.L. § 600.5805(10); *Cantu v. Michigan Dep't of Corr.*, 653 F. Supp. 2d 726, 742 (E.D. Mich. 2009). Both Plaintiff and Defendants agree that this is the applicable statute of limitations.

The parties dispute, however, when Steiger's claim accrued. The question of when a § 1983 claim accrues is purely one of federal law "that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). "[T]he statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The operative question for Steiger, then, is when he would have known or had reason to know that the act providing the basis of his injury occurred.

Steiger alleges four different claims under § 1983 against Defendants Paschke and Brewbaker: illegal seizure, malicious prosecution, violation of his First Amendment rights, and

violation of his Fourteenth Amendment Due Process rights. Those claims will be analyzed in turn.

### 1.

Steiger's first claim is that he was illegally seized in violation of the Fourth Amendment when he was arrested for prescription drug fraud. The Supreme Court has held that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." *Wallace*, 549 U.S. at 391 (quoting 2 H. Wood, Limitation of Actions § 187d(4), p. 878 (rev. 4th ed.1916)) (internal quotation marks omitted). Where an individual is not imprisoned but nevertheless detained pursuant to criminal charges and brought before a magistrate, the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. Put differently, "the statute of limitations on [an illegal seizure] § 1983 claim commence[s] to run when [a plaintiff] appear[s] before the examining magistrate and [is] bound over for trial." *Id*. at 391. These claims—for false imprisonment or illegal seizure—accrue "even though the full extent of the injury is not then known or predictable." *Id*. (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526–527 (1991)) (internal quotation marks omitted).

Steiger's claim is not for false imprisonment but illegal seizure. He claims that his illegal seizure was his arrest for prescription drug fraud. For accrual purposes, Steiger's tolling claim is more beneficially counted from the time that he appeared before the state district court on February 2, 2012 for the second day of his preliminary examination. It was then that the charges against him were dismissed. He was not detained at any point after that day. Based on when his preliminary examination concluded, the latest accrual date for his illegal seizure claim (again, using the false arrest accrual framework) is February 2, 2012.

### 2.

Second, Steiger brings a claim of malicious prosecution under § 1983. "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Thus, "favorable termination of the prior criminal proceeding marks the point at which a 1983 claim for malicious prosecution accrues." *Dunn v. State of Tenn.*, 697 F.2d 121, 127 (6th Cir. 1982).

The parties dispute what exactly it means for there to be a "favorable termination of the prior criminal proceeding." According to Steiger, favorable termination occurred when the Michigan Court of Appeals denied leave to appeal on March 5, 2013. Defendants argue that Steiger's claim accrued on February 2, 2012, when the trial court dismissed the criminal charges against him.

In *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856-57 (6th Cir. 2003), the Sixth Circuit addressed the accrual of a § 1983 action following the dismissal of a criminal prosecution that is subsequently appealed by the prosecutor. Trzebuckowski owned and operated a pool hall. The city charged him with violating a Cleveland city ordinance that "prohibit[ed] any 'owner, operator, agent or keeper of a billiard room' from permitting minors under the age of eighteen to remain on the premises." *Id*. at 854. Trzebuckowski filed a motion to dismiss, arguing that "the ordinance was unconstitutional as applied." *Id*. The trial court granted the motion and dismissed the charges against Trzebuckowski on September 12, 1995.

The city appealed the dismissal. The court of appeals reversed the trial court, deeming the ordinance constitutional. Trzebuckowski appealed. Nearly four years after the dismissal of the original criminal complaint, the Ohio Supreme Court reversed the court of appeals and ruled the ordinance unconstitutional on June 2, 1999.

On May 31, 2000, Trzebuckowski filed a federal § 1983 complaint against the city and the chief prosecutor. The defendants moved to dismiss his complaint for being barred by the statute of limitations. The district court granted the defendants' motion and Trzebuckowski appealed.

The Sixth Circuit held that, under the *Heck* standard, Trzebuckowski's claim accrued when the state trial court dismissed the charges against him on September 12, 1995, not when the Ohio Supreme Court reversed the decision of the court of appeals and determined that the ordinance was unconstitutional. The Sixth Circuit explained that when the charges against Trzebuckowski "were dismissed by the municipal court . . . [t]here was no underlying criminal proceeding during the course of the state appellate litigation that could have caused the federal court to render a decision in the § 1983 action in conflict with findings in a pending criminal matter." *Id.* at 857. Thus, the court concluded that "the statute of limitations on Trzebuckowski's § 1983 claim began to run on September 12, 1995, the date the municipal court dismissed the charges against him." *Id.*

The rule is strict, both in application and effect. Even though Steiger was facing the possibility of having the criminal case against him reinstated on two levels of appeal, he was nevertheless free from the threat and pressure of the underlying criminal proceeding. The trial court's dismissal of the charges against Steiger on February 2, 2012 is the time at which Steiger's cause of action accrued under *Heck* and *Trzebuckowski*.

**3.**

Third, Steiger claims that Defendants retaliated against him for exercising his First Amendment rights by falsely arresting him and maliciously prosecuting him. Where a plaintiff claims defendants prosecuted him in retaliation for the plaintiff's exercise of First Amendment

Rights, the plaintiff's claim accrues "when defendants initiated the prosecution." *Rapp v. Putman*, No. 15-1995, 2016 WL 1211850, at *3 (6th Cir. Mar. 29, 2016). Based on Steiger's complaint, the latest accrual date that could apply to his First Amendment retaliation claim is February 2, 2012 when his preliminary examination ended.

**4.**

Next, Steiger alleges that Defendants Paschke and Brewbaker violated his Fourteenth Amendment due process rights. His claim accrues when he "knows or has reason to know of the injury which is the basis of his action." *JiQiang Xu v. Michigan State Univ.*, 195 F. App'x 452, 456 (6th Cir. 2006) (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)) (internal quotation marks omitted). Determining when the claim accrued requires focusing on the date of the injury alleged. *Id*. The operative inquiry is "what event should have alerted the typical lay person to protect his or her rights." *Id*. (quoting *Dixon*, 928 F.2d at 215).

Again, based on the allegations in Steiger's complaint, his injury would have occurred, at the latest, on February 2, 2012 when the criminal proceedings against him terminated in his favor.

**5.**

Steiger, for his part, argues that all of his § 1983 claims against Defendants Paschke and Brewbaker accrued on March 5, 2013 when the Michigan Court of Appeals affirmed the trial court's dismissal of the charges against him. In support of this argument he cites *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) for the proposition that "the only state proceedings which toll the running of the statutes of limitations are those which are properly and timely filed." Pl.'s Resp. Br. 19, ECF No. 31. The meaning of this assertion is unclear. In any event, it is irrelevant because *Israfil* is inapposite. In *Israfil* the Sixth Circuit was addressing the tolling of

the one year statute of limitations on habeas corpus claims brought under 28 U.S.C. § 2254. The § 2254 case law has firmly established a tolling mechanism whereby a prisoner may toll the one year limitations period while pursuing proper and timely post-conviction relief in state court. *Israfil* provides no help to analyzing accrual or tolling issues for § 1983 claims.

**B.**

Steiger also brings a state gross negligence cause of action against Defendants Paschke, Brewbaker, and Szatkowski. All three Defendants were sheriffs or sheriff's deputies at the time the relevant facts supporting Steiger's claims occurred. Pursuant to Mich. Comp. Laws § 600.5805(7), "[t]he period of limitations is 2 years for an action against a sheriff charging misconduct or neglect of office by the sheriff or the sheriff's deputies." This is a more specific, and shorter limitations period than the catch-all 3 year period found in subsection (10) of the same section. The longer limitations period in subsection (10) is the relevant limitations period for § 1983 actions. Steiger's gross negligence claim is not brought under 42 U.S.C. § 1983 and is purely a state law cause of action.

Under Michigan law, a negligence "claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827. *See also Lemmerman v. Fealk*, 534 N.W.2d 695, 697 (Mich. 1995) (quoting Mich. Comp. Laws § 600.5827). Thus, as with Steiger's § 1983 claims, the latest conceivable date for his gross negligence claim is the date that his preliminary examination concluded, February 2, 2012. Steiger's claims that the date is actually later than this are, for the reasons already explained, meritless.

Steiger contends, however, that the proper limitations period for his gross negligence claim is three years, rather than the two year period provided in Mich. Comp. Laws §

600.5805(7). In support of this argument he cites to *Harris v. Whale*, Case No. 5:00-CV-50, 2001 U.S. Dist. LEXIS 17425, at *2 (W.D. Mich. Oct. 15, 2001). In *Harris*, the court denied the plaintiff leave to amend his complaint to add two more § 1983 claims and a state law gross negligence claim. The court held that "[p]laintiff's state law gross negligence claim is governed by the same statute of limitations as his § 1983 claims. *See* M.C.L.A. 600.5805(9)." *Id*. at *7.

To the extent that *Harris* holds that the less specific three year statute of limitations applies to negligence claims when they are brought with § 1983 claims, it is incorrectly decided and will not be followed.[2] But the court in *Harris* also did not have to confront the question of which subsection of Mich. Comp. Laws § 600.5805 applied to the plaintiff's claims because his claims were barred even under the more generous three year period of limitations.

The same is the case here with Defendants Paschke and Brewbaker. Even if, as Steiger claims, the three year limitations period in § 600.5808(10) applies to his gross negligence claim (and there is no authority supporting the claim that it does), Steiger's gross negligence claims against Defendants Paschke and Brewbaker would be barred.

Defendant Szatkowski requires resolving the question of the applicable limitations period. There is no authority for disregarding the more specific limitations period of two years found in § 600.5808(7). Indeed, its specificity argues in favor of its application here. See *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 450 (6th Cir. 2007) ("One of the most basic canons of statutory interpretation is that a more specific provision takes precedence over a more general one."). Accordingly, under § 600.5808(7), Steiger would have had to have filed his gross negligence claim against Defendant Szatkowski on or before February 2, 2014. He first filed the claim on October 24, 2014 in *Steiger I. See Steiger v. Hahn, et al.*, Case No. 14-14110.

---

[2] The case is, in any event, not binding on this Court.

### C. Equitable

Steiger makes three arguments as to why the statute of limitations should be tolled to allow the challenged claims to proceed. First, he argues that he should be allowed to rely on the tolling agreement entered into between the parties in Steiger I. Second, he claims that the complaint in this action somehow relates back to the complaint in Steiger I. Third, Steiger argues that he is entitled to equitable tolling. And lastly, he argues that Defendants Paschke and Brewbaker should be equitably estopped from arguing that his claims are untimely.

None of Steiger's tolling arguments are directed at Deputy Szatkowski, who was properly named in Steiger I.

### 1.

Steiger first seeks to rely on the stipulated order of dismissal in Steiger I that tolled the statute of limitations as to all named defendants for 90 days. That order provided, in relevant part:

> It is **ORDERED** that the above-captioned case is **DISMISSED WITHOUT PREJUDICE** and without costs and/or fees to any party;
>
> It is further **ORDERED** that in the event that Plaintiff re-files a lawsuit involving the same Defendants, Defendants shall not be allowed to assert any Statute of Limitations defense unless this defense was available to Defendants in the original complaint and lawsuit and as long as Plaintiff re-files this action within ninety (90) days from the entry of this Order.
>
> It is further **ORDERED** that the discovery taken by all parties in the above captioned case is available to be used if Plaintiff re-files his cause of action in accordance with this Order.

May 6, 2015 Stip. & Order of Dismissal, ECF No. 28, Steiger I, Case No. 14-14110. According to Steiger, the language of the second order line encompasses Defendants Paschke and Brewbaker, even though they were not defendants in *Steiger I*.

- 16 -

Stipulations are interpreted according to the general rules of contract interpretation. *Van Dorn Plastic Mach. Co. v. N.L.R.B.*, 881 F.2d 302, 305 (6th Cir. 1989) (quoting *Nat'l Audubon Soc., Inc. v. Watt*, 678 F.2d 299, 307 (D.C. Cir. 1982)). "[T]he terms of a provision that is clear and unambiguous must be 'taken and understood in [its] plain, ordinary, and popular sense.'" *Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (applying Michigan contract law). "A contract is ambiguous when its terms are reasonably and fairly susceptible to multiple understandings and meanings. Mere disagreement among parties as to the meaning of such terms does not constitute ambiguity." *Id.* (internal citations omitted).

On the face of the stipulation, the agreement does not apply to Defendants Paschke and Brewbaker. The stipulation states that "in the event Plaintiff re-files a lawsuit involving the *same Defendants*, Defendants shall not be allowed to assert any Statute of Limitations defense unless this defense was available to Defendants in the original complaint and lawsuit." May 6, 2015 Stip. & Order. Defendants Paschke and Brewbaker were not defendants in *Steiger I* and, as a result, are not subject to the tolling provision of the dismissal order under its plain language.

## 2.

Next, Steiger argues that his complaint in this case relates back to the complaint in *Steiger I* under Federal Rule of Civil Procedure 15. Concerning amendments to pleadings, the rule provides:

(c) Relation Back of Amendments.

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

- 17 -

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

The rule does not apply to Steiger's complaint in this case. The rule very explicitly states that it governs the relation back of amendments. This case's complaint is not an amendment to the pleading in *Steiger I*. Even if it could be considered an amendment to Steiger I's complaint, it would still be improper under Rule 15. The amendment provision in Rule 15 does not permit a plaintiff to add new parties after the statute of limitations has run. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). To add such a party, a plaintiff must demonstrate that the new defendant:

> (i) received such notice of the action [within the time to serve process under Rule 4(m) ] that [he] will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity.

*Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 433 (6th Cir. 2013) (quoting Fed. R. Civ. P. 15(c)(1)(C)) (emendations in original). Steiger does not argue that some mistake prevented him from naming Defendants Paschke or Brewbaker. Or that there was an "error, misconception, or misunderstanding; an erroneous belief" that led him mistakenly attributing Defendants Paschke and Brewbaker's conduct to another party. *Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 434 (6th Cir. 2013) (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (defining "mistake" in Rule 15(c)(1)(C)(ii)).

- 18 -

Even if Steiger was unaware of the involvement or potential involvement of Defendant Paschke and Brewbaker, the Sixth Circuit has held that "an absence of knowledge is not a mistake, as required by Rule 15(c)(1)(C)(ii)." *Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 433-34 (6th Cir. 2013) (citing *Cox*, 75 F.3d at 240).

Steiger argues, however, that Rule 15(c)(1)(C) is not the proper framework for analyzing his complaint, but rather Rule 15(c)(1)(B) is. That subsection provides for amendments when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). First, as already explained, Steiger's current complaint is not an amendment to the complaint in *Steiger I*. So this argument is meritless.

But, even if the current complaint could be construed as an amendment to *Steiger I*, it is not properly analyzed under Rule 15(c)(1)(B). The Sixth Circuit "has held that claims against *additional* parties do not relate back." *Ham v. Sterling Emergency Servs. of the Midwest, Inc.*, 575 F. App'x 610, 615 (6th Cir. 2014) (citing *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("Rule 15(c)(1)(B) allows relation back of an amendment asserting a 'claim or defense,' but it does not authorize the relation back of an amendment adding a new *party*." (emphasis in original))). "[A]n amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir.1991)) (internal quotation marks omitted).

Thus, there is no authority under Rule 15 by which the current complaint relates back to the complaint in *Steiger I*.[3]

### 3.

Next, Steiger claims he is entitled to have the statute of limitations equitably tolled. "[T]he Supreme Court has approved the application of equitable tolling to statutes of limitations to prevent unjust results in cases arising at law as well as at equity." *Smith v. Solis*, 390 F. App'x 450, 453 (6th Cir. 2010) (quoting *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1039-40 (6th Cir. 1984). Five factors are useful in determining if equitable tolling should apply to a given case: "(1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's

---

[3] Steiger relies on *Moore v. City of Harriman*, 272 F.3d 769, 774-75 (6th Cir. 2001) and *Berndt v. State of Tenn.*, 796 F.2d 879 (6th Cir. 1986). Both cases are inapposite.

In *Moore*, the Sixth Circuit permitted the plaintiff to amend his complaint to clarify that he was suing the defendants in their individual and official capacities. There, unlike in Steiger's case, Moore was amending a prior complaint in the case, not filing an entirely new case. In addition, the defendants had already been named and were aware of the suit. Moore was simply clarifying the capacity in which they were sued. Additionally, Moore included language in his complaint that evinced intent to sue the defendants in their individual capacity from the inception of the suit.

In *Berndt*, the Sixth Circuit affirmed the dismissal of a *pro se* plaintiff's suit against the state of Tennessee on the basis of Eleventh Amendment immunity. The court recognized, however, that certain deference was due to the plaintiff as a result of his *pro se* status. It held that while the plaintiff did not ask the district court for leave to amend to name individual defendants before request it on appeal, it was proper to remand to the district court to allow the plaintiff to request permission to amend.

The decision was based on the fact that the plaintiff identified a number of individual, but unnamed, tortfeasors in his complaint. The rule established by the court was purposefully narrow and constrained to pro se plaintiffs:

> We express no opinion on whether a remand will be appropriate in every conceivable instance where a pro se complainant fails to request for leave to amend, but we feel that a case, such as this, where the claims are of such a serious nature demands that the complaint be closely scrutinized by the district court before it is dismissed in the pleading stage of litigation.

*Berndt*, 796 F.2d at 883. The court remanded to give Berndt the opportunity to move to amend his original complaint.

Steiger is neither pro se, nor, again, is he seeking to amend his original complaint. Berndt was pro se and despite his original complaint being dismissed as pled, the Sixth Circuit did not dismiss the action in its entirety. Instead, it gave "Berndt a reasonable opportunity to amend in line with the considerations set forth in this opinion." *Id*. at 884.

ignorance of the time constraint." *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003). Steiger claims these elements have been met, largely because Steiger "reasonably believed that Defendants would live up to their end of the deal and it would extend to their compatriots." Pl.'s Resp. Br. 22, ECF No. 31. The deal Steiger references is the stipulation dismissing *Steiger I*, which Steiger believes also bound Defendants Paschke and Brewbaker.

None of the elements favoring the tolling of the statute of limitations have been met here, contrary to Steiger's claims. Steiger was well aware, actually and constructively, of the filing requirement. He has comprehensively argued that a three year statute of limitations applies to § 1983 claims in Michigan. Thus, he was aware that, at a minimum, all of the claims in his complaint had to be filed against Defendants Paschke and Brewbaker within three years. He was also aware that the statute of limitations was drawing to a close, as evidenced by his decision to enter into a tolling agreement dismissing the complaint in *Steiger I*.

Steiger argues against this conclusion by claiming he was duped by the stipulation entered in Steiger I. He asserts that he "was unaware that the Defendants narrowly interpreted the tolling agreement, and therefore lacked constructive knowledge of the statute of limitations issue." Id. at 23.

This argument is unpersuasive. As already explained, the language of the stipulation is clear. It applies to the "same Defendants." Arguing that excluding Defendants Paschke and Brewbaker is a narrow interpretation of the agreement ignores the fact that they were not named by Steiger as defendants in Steiger I. Excluding Defendants Paschke and Brewbaker from the stipulations limitation on the "same Defendants" is not a narrow interpretation of that language, it is the only reasonable interpretation. If Steiger had doubts about the inclusion of Paschke and Brewbaker in the tolling agreement, it fell to him to clarify that they were covered. Otherwise, it

- 21 -

is perfectly reasonable for Paschke and Brewbaker to conclude that the agreement did not cover them because Steiger had already made the decision not to name them in *Steiger I*. For that reason, Paschke and Brewbaker would also be prejudiced by having the statute of limitations tolled against them.

Next, Steiger was not diligent in pursuing his rights. The underlying criminal proceedings against him ended on February 2, 2012 and he did not file *Steiger I* until October 24, 2014. Even if Steiger was under the incorrect belief that his claim did not accrue until his appeal was dismissed on March 5, 2013, he still waited over eighteen months to file *Steiger I*. He then waited another six months to attempt to toll the statute of limitations so that he could bring Paschke and Brewbaker into the case at a later point. This is not diligent pursuit.

Finally, an overarching point must be made that renders this whole discussion academic. Steiger entered into the tolling agreement with the Steiger I defendants on May 6, 2015. Defendants Paschke and Brewbaker had not yet been named in Steiger I. Thus, assuming that instead of entering into the tolling agreement, Steiger moved to amend his complaint to add Paschke and Brewbaker, his amendment would have been untimely. As explained above, Rule 15 provides no authority for adding Paschke and Brewbaker to Steiger I after the statute of limitations had run. The limitations period against Paschke and Brewbaker ran on February 2, 2015. So even if Steiger could articulate a claim for including Paschke and Brewbaker in the tolling agreement, it would be of no help to him.

**4.**

Finally, Steiger argues that Defendants Paschke, Brewbaker, and Szatkowski should be equitably estopped from asserting the statute of limitations defense. As just explained, however, even if equitable estoppel applied and allowed Steiger to use the tolling agreement against the

three moving Defendants, it would make no difference to the disposition of Defendants' motion for judgment on the pleadings. Defendant Szatkowski could have raised the statute of limitations defense in Steiger I and the statute of limitations for Defendants Paschke and Brewbaker had run before the tolling agreement was agreed upon by the parties.

**IV.**

Steiger's claims against Defendants Paschke and Brewbaker accrued, at the latest, on February 2, 2012. There is no basis for tolling or extending the limitations period for those claims. His claims against Defendants Paschke and Brewbaker are untimely and will be dismissed.

Steiger's gross negligence claim against Defendant Szatkowski also accrued, at the latest, on February 2, 2012. That claim, under state law, has a two year statute of limitations. There is no basis for tolling or extending the limitations period for that claim. His gross negligence claim against Defendant Szatkowski will be dismissed.

Accordingly, it is **ORDERED** that Defendants Paschke, Brewbaker, and Szatkowski's motion for partial judgment on the pleadings, ECF No. 28, is **GRANTED**.

It is further **ORDERED** that Plaintiff Richard Kevin Steiger's Complaint, ECF No. 1, is **DIMISSED** as to Defendants Paschke and Brewbaker.

It is further **ORDERED** that Count IV of Plaintiff Richard Kevin Steiger's Complaint, ECF No. 1, is **DISMISSED** as to Defendant Szatkowski.


Dated: April 22, 2016                             s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

- 23 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 22, 2016.

s/Amanda Chubb for Michael A. Sian
MICHAEL A. SIAN